A96A2122. GRAND PARTNERS JOINT VENTURE I et al.
v. REALTAX RESOURCE, INC.
(483 SE2d 922)

RUFFIN, Judge.

Realtax Resource, Inc. ("Realtax") sued Grand Partners Joint Venture I and Grand Partners Joint Venture II (collectively "Grand Partners") for fees allegedly owed for services performed by Realtax. Grand Partners appeals from the trial court's grant of partial summary judgment to Realtax and the denial of its motion for summary judgment. For reasons which follow, we affirm.

The record reveals the following facts. Grand Partners owned property known as the GLG Grand Tower in Atlanta. Believing that it might be entitled to a significant tax refund on the property, Grand Partners hired Realtax, which is in the business of providing services that minimize real estate tax evaluation and, in that connection, pursuing real estate tax appeals with taxing authorities on behalf of clients. On January 12, 1995, Grand Partners and Realtax entered into a "Property Tax Commitment Agreement," whereby Realtax agreed, in exchange for a fee, to be responsible for the "1994 Ad Valorem Tax Program" relating to Grand Partners' property within the GLG Grand Tower.

Pursuant to that agreement, Realtax was responsible for "the preparation and filing of real estate tax returns, where applicable, an analysis of all assessed values, the submission of an annual Ad

Valorem Tax Report, where applicable, which compares prior and current year's tax obligations, and the presentation of audited tax statements outlining the results of any appeal in a timely fashion for payment." In addition, the agreement stated that "Realtax will initiate appeals to local taxing jurisdictions where Realtax feels the need is warranted. It is expressly understood by all parties that the compensation in this agreement includes only the informal appeal levels up to and including any State Boards of Equalization." Grand Partners also executed a "Letter of Authorization" authorizing Realtax to "file real estate tax returns, where applicable, to change mailing addresses on tax rolls and digests, to investigate appraisals and assessments, to argue tax appeal cases in both informal review and formal review, to appear before administrative boards and agencies and, where authorized, to appear before courts of competent jurisdiction."

Realtax filed a property tax appeal on behalf of Grand Partners and negotiated with a representative from the Fulton County tax assessor's office regarding the county's assessment of the GLG Grand Tower, which was initially appraised at $75 million. Through negotiations, Realtax reached a proposed settlement with the county to value the property at approximately $51 million. Grand Partners approved the settlement and withdrew its tax appeal before the appeal reached the county board of equalization.

Following the settlement, Grand Partners received tax refunds relating to the property. Dissatisfied with the results reached by Realtax, however, Grand Partners refused to pay Realtax the previously negotiated fees for its services.

Realtax subsequently sued Grand Partners for non-payment of fees under the Property Tax Commitment Agreement. Grand Partners answered, asserting several affirmative defenses. In particular, Grand Partners averred that the agreement, which it voluntarily entered, is void and illegal because Realtax sought "to enforce a contract pursuant to which it would engage in the unauthorized practice of law without a license." Realtax and Grand Partners both moved for summary judgment. After a hearing, the trial court denied Grand Partners' motion for summary judgment and granted partial summary judgment to Realtax on Grand Partners' affirmative defense that Realtax illegally engaged in the unauthorized practice of law and on Grand Partners' argument that Realtax cannot collect its fees because it acted as a real estate appraiser without certification. This appeal followed.

1. Grand Partners' first two enumerations of error focus on the unauthorized practice of law defense. It argues that the trial court erred in granting Realtax summary judgment on the defense and further claims that the trial court erred in denying it summary judg-

ment on this issue.

"When the facts concerning an affirmative defense are uncontradicted, the matter may be disposed of by summary judgment [cit.]; but the burden is on the movant to prove no genuine issue of fact remains, the evidence is construed in favor of the respondent, and his evidence is treated with considerable indulgence. [Cit.]" *Maddox v. Leaphart*, 214 Ga. App. 340, 342 (3) (447 SE2d 694) (1994). Applying this standard, we find that the trial court properly granted summary judgment to Realtax and denied summary judgment ' Grand Partners on the unauthorized practice of law defense.

(a) The unauthorized practice of law is illegal. OCGA §§ 15-19-51; 15-19-56. In setting the parameters for this illegal conduct, the General Assembly has defined the "practice of law" as including: "(1) [r]epresenting litigants in court and preparing pleadings and other papers incident to any action or special proceedings in any court or other judicial body; . . . (5) [t]he giving of any legal advice; and (6) [a]ny action taken for others in any matter connected with the law." OCGA § 15-19-50. Section 15-19-51 (a) makes it unlawful for "any person other than a duly licensed attorney at law . . . [t]o render or furnish legal services or advice [or] . . . [t]o render legal services of any kind in actions or proceedings of any nature."

Grand Partners argues that, as a matter of law, Realtax engaged in the practice of law without a license under the Property Tax Commitment Agreement, thereby rendering the agreement void. Specifically, Grand Partners contends that because the board of equalization is authorized to decide legal issues, such as constitutional challenges (see *Wilkes v. Redding*, 242 Ga. 78 (247 SE2d 872) (1978)), Realtax's commitment to represent its interests before that board necessarily amounts to the practice of law. We disagree and refuse to deem inappropriate all non-lawyer representation before the board.

The General Assembly created county boards of equalization to hear and determine appeals from property assessments "as to matters of taxability, uniformity of assessment, and value, and, for residents, as to denials of homestead exemptions." OCGA § 48-5-311 (e) (1). The General Assembly specifically authorized non-lawyers to appear before these boards on behalf of taxpayers. Outlining the procedures governing the boards, Section 48-5-311 (e) (6) (A) provides that "[a] taxpayer may appear before the board concerning any appeal *in person, by his or her authorized agent or representative, or both*." (Emphasis supplied.)

Grand Partners argues that the word "representative" must mean "attorney" in order to harmonize OCGA § 48-5-311 (e) (6) (A) with the statutory prohibition against the unauthorized practice of law. Representation before the board, however, does not necessarily involve the practice of law. Although an appeal to the board conceiv-

ably *could* implicate legal services and advice, we do not find that such services and advice are provided or required in every appeal, and certainly not this appeal. Furthermore, we do not construe representation before such a board as an appearance "in court." Boards of equalization are not courts. They are quasi-judicial administrative bodies created by the legislature. See *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 210 (1) (367 SE2d 43) (1988); *Loyd v. Ga. State Health Planning &c. Agency*, 168 Ga. App. 850, 852 (1) (310 SE2d 738) (1983) (indicating that county boards of equalization are administrative bodies); see also Ga. Const. of 1983, Art. VI, Sec. I, Par. I ("[T]he General Assembly . . . may authorize administrative agencies to exercise quasi-judicial powers.").

In contrast to other statutory references to the taxpayer's "attorney," OCGA § 48-5-311 (e) (6) (A) uses the more generic term "representative." Compare with OCGA § 48-5-311 (g) (2). To support its position, Grand Partners "would have us add a limiting phrase into a subsection when the legislature, faced with a choice, did not do so. A statute shall be construed so as to give full force and effect to all of its provisions and so as to reconcile any apparent conflicts." (Citations and punctuation omitted.) *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 72 (1) (456 SE2d 642) (1995); see also *Irwin v. Young*, 212 Ga. 1, 5 (90 SE2d 22) (1955) ("The word 'represent' means to stand in the place of another, act his part, or speak with authority on behalf of another. [Cit.] One does not have to be a lawyer to represent another.").

The legislature elected to permit non-lawyer representation before the county boards of equalization. This statutory authorization does not necessarily involve the practice of law without a license. See *In re Petition of Burson*, 909 SW2d 768, 777 (Tenn. 1995) (upholding statutory provision allowing non-lawyer representation of taxpayers before boards of equalization because the evidence did not establish that the services performed "require the professional judgment of a lawyer"). Similarly, Realtax's agreement to pursue Grand Partners' appeal before the board does not, as a matter of law, implicate the provision of legal services or advice. On its face, therefore, "the contract reflects no illegality."[1] *Kimbrell v. Connor*, 218 Ga. App. 812, 814 (463 SE2d 376) (1995).

(b) Pretermitting the question of when lay representation in a

---

[1] Grand Partners contends that through the authorization letter, Realtax improperly and illegally agreed to appear on behalf of Grand Partners in "courts of competent jurisdiction." Pretermitting whether the letter is part of the contract, as Grand Partners claims, it specifically indicates that Realtax may appear in such courts only "where authorized." Furthermore, the letter does not provide that Realtax will represent Grand Partners' legal interests. It may simply authorize Realtax to appear as a witness on Grand Partners' behalf. On its face, this letter does not implicate the unauthorized practice of law.

tax appeal might encroach upon the practice of law, we further find that Realtax's work for Grand Partners did not involve the unauthorized practice of law.

The Realtax employee who worked on Grand Partners' appeal testified that the appeal was negotiated and settled before progressing to the board of equalization. He further testified that, with respect to the appeal, he performed the following duties: "I looked at comparable property tax values. I analyzed the current asking prices of the condos in relation to the tax values. I compiled the income analysis pro forma and year ending for the office and the hotel. And I derived all those components into a value which I felt would be fair based . . . for the tax year 1994 on each individual component."

At deposition, a Grand Partners representative described the "legal" aspects of Realtax's services as follows: "[Realtax] reviewed contracts. They reviewed statutes I would hope. To the extent that you would call those — applied the facts to legal situations. To the extent that you believe that calls for — call that practice, call that law, then they provided legal services." He testified that Realtax also advised Grand Partners on the law "[t]hroughout the process" and proffered advice on "the probable outcome of a trial" on the issue of "tax valuation." Realtax further offered the opinion that Grand Partners "would not do well at trial for a variety of reasons."

With respect to Realtax's alleged legal services, therefore, the only specifics provided by Grand Partners' representative were that Realtax reviewed contracts, read statutes, and provided advice on tax valuation and how that valuation would be received by the jury. We do not find that these acts or Realtax's other activities connected to filing and negotiating the tax appeal constitute the unauthorized practice of law. Conclusory statements that Realtax advised Grand Partners on the law and applied facts to legal situations similarly cannot avoid summary judgment. "Allegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment." *Peterson v. Midas Realty Corp.*, 160 Ga. App. 333, 335 (287 SE2d 61) (1981).

Grand Partners has pointed to no evidence that Realtax provided legal services and advice or otherwise practiced law. To the contrary, the record indicates that Realtax offered tax valuation services and advised Grand Partners on how this valuation would be received by others, including a jury. The trial court properly granted summary judgment to Realtax and denied summary judgment to Grand Partners on the unauthorized practice of law defense. *Maddox*, supra.

2. In its final enumeration of error, Grand Partners claims that the trial court erred in granting summary judgment to Realtax on its argument that "Realtax acted as an unclassified real estate appraiser in the performance of its contract with Grand Partners."

Realtax asserts that Grand Partners waived this argument by failing to include it in its answer, pretrial discovery, pretrial order, or other pleadings. We agree.

Grand Partners admittedly never raised the issue in its summary judgment documents, and the record reveals no mention of it in Grand Partners' answer or any submissions relating to the pretrial order. Instead, Grand Partners voiced this argument for the first time at the summary judgment hearing. Realtax objected to the argument as untimely.

In an effort to avoid waiver, Grand Partners contends that, as part of its prima facie case for compensation, Realtax must plead and prove that its employees "held a Georgia appraiser classification of the type necessary to perform . . . appraisal activity [for Grand Partners] at all times during the performance of such services." OCGA § 43-39A-17. In short, Grand Partners argues that it was never obligated to raise the appraisal issue because Realtax bore the burden of proving that it held the appropriate appraisal licenses. Realtax, however, claims that Grand Partners owes fees for tax consulting services, not real estate appraisal services. We find that Grand Partners was obligated to timely raise for the court and opposing party its factual argument that Realtax's services actually constituted "real estate appraisal activity."

"A pretrial order limits the issues for trial to those not disposed of by admissions or agreements of counsel. The order, when entered, controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. If a claim or issue is omitted from the order, it is waived." (Citations and punctuation omitted.) *Long v. Marion*, 257 Ga. 431, 433 (2) (360. SE2d 255) (1987); see also *Rice v. Cropsey*, 203 Ga. App. 272, 273 (1) (416 SE2d 786) (1992). Grand Partners did not raise this argument in its answer, other pleadings, or its pretrial order submissions. Thus, the trial court did not err in removing the argument from the trial of this case. *Long*, supra.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MARCH 12, 1997.

*Minkin & Snyder, Michael J. King, G. Brian Raley*, for appellants.

*Gorby & Reeves, Michael J. Gorby, Mary D. Peters, Douglas R. Kertscher, Adam R. Gaslowitz & Associates, Adam R. Gaslowitz, Michael S. Wakefield*, for appellee.